U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JAN 26 2007
CLERK, U.S. DISTRICT COURT
By Deputy

N

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ORIGINAL

3-07CV0180-N

| | | |
|---|---|---|
| **JAMES L. HAAR**<br>**Plaintiff** | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO.** 8182 |
| **ARTHUR JAMES JUMPER, STEVE DAVIS, MAURICE HARRELL, THE CITY OF SEAGOVILLE, TEXAS AND DOES 1 THROUGH 3**<br>**Defendants** | § | **JURY DEMANDED** |

**DEFENDANTS' NOTICE OF REMOVAL**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Defendants, City of Seagoville, Texas, Arthur James Jumper, Steve Davis, and Maurice Harrell, ("collectively referred to as the Seagoville Defendants"), and files this their Notice of Removal pursuant to 28 U.S.C. § 1446 on the basis that Plaintiff's state-court petition invokes federal-question jurisdiction. In support thereof, the Seagoville Defendants would respectfully show this Honorable Court the following:

## I. Introduction

1. On December 15, 2006, James L. Haar ("Plaintiff") filed his Plaintiff's Original Petition in County Court at Law No. 4, Dallas County, Texas. Plaintiff's Petition was served on the City on December 28, 2006. Plaintiff's Petition brings claims for false arrest, deprivation of property, civil conspiracy, violations of Plaintiff's Fourth Amendment rights protected by the United States Constitution and denial of rights under the laws of the State of Texas. Additionally, Plaintiff seeks recovery of attorney fees under 42 U.S.C. § 1988.

2. Plaintiffs suit is removable on the face of Plaintiff's Original Petition based on federal

question jurisdiction. Specifically, Plaintiff sues the Defendants alleging violations of his constitutional rights, namely a custodial interrogation wherein Plaintiff was "detained and questioned for more than two hours without the opportunity to make a phone call. At no time was Plaintiff ever given his Miranda warnings." See Plaintiff's Original Petition, ¶ 17-18. Additionally, Plaintiff seeks recovery of attorney fees under 42 U.S.C. § 1988, which provides for recovery of attorneys fees for successful claims brought under certain provisions of federal law. See Plaintiff's Original Petition, Paragraph 59.

3. Defendants, upon being served on December 28, 2006, first became aware of Plaintiffs' claims under federal law. The Defendants timely filed this removal within the 30-day period required under 28 U.S.C. §1446(b).

## II. Basis for Removal

4. Plaintiffs sue the Defendants alleging violations of his constitutionally protected rights under the United States Constitution. As previously noted, Plaintiff alleges a custodial interrogation wherein he was detained and questioned for a lengthy period to time without given the opportunity to make a phone call and without ever being advised on his *Miranda* rights guaranteed by the Fourth Amendment. Though Plaintiff does not expressly cite 42 U.S.C. §1983, it appears as though he is bringing a claim under Section 1983 for violations of his Fourth Amendment Rights under the United States Constitution. Further, due to possible removal deadlines, counsel for Defendants contacted Plaintiff's counsel to inquire into Plaintiff's intent to assert a federal claim. Plaintiff's counsel acknowledged that Plaintiff's pleading was somewhat vague, and that Plaintiff did intend to assert a federal claim and thus removal was proper. Further, Plaintiff's counsel represented that on Friday, January 26, 2007, Plaintiff would file an amended pleading which would more clearly demonstrate Plaintiff's federal claims.

5. Just prior to filing Defendants' removal documents, Plaintiff faxed a copy of Plaintiff's First Amended Original Petition to counsel for Defendants. Plaintiff's Amended Petition clearly sets forth Plaintiff's federal law claims under 42 U.S.C. § 1983. *See* Exhibit "A", incorporated herein by reference. Plaintiff's amendment alleges that he was denied his rights guaranteed by federal and state law. *See* Exhibit "A", ¶ 9. Plaintiff also alleges he suffered biolations of his Fourth and Fourteenth Amendments to the United States Constitution. *See* Exhibit "A", ¶ 25. Plaintiff outlines his federal claims under Section 1983 for false arrest, wrongful seizure of property, and inadequate supervision and training. *See* Exhibit "A", ¶ 27-37. Plaintiff's First Amended Original Petition removes any question as to whether Plaintiff is asserting a federal claim. Removal is proper because Plaintiffs' suit involves a federal question. See, 28 U.S.C. §§1331, 1441 (2005).

6. All Defendants consent to removal as required under 42 U.S.C. § 1446. All pleadings, process, orders and other filings in the state court action are attached to this notice as required by 28 U.S.C. § 1446(a) and Local Rule 81.1.

7. Venue is proper in this district under 28 U.S.C. § 1441(a) because this District and Division embrace the place where the removed action has been pending. Specifically, the County Court at Law No.4, Dallas County, Texas, is located within the Northern District of Texas, Dallas Division.

8. Defendants promptly filed a copy of this Notice of Removal with the clerk of the County Court at Law No. 4, Dallas County, Texas, where the action has been pending.

9. The Seagoville Defendants have, concurrent with the filing of this Notice of Removal, given notice of this Notice of Removal to all parties of record.

## IV. Conclusion

WHEREFORE, Defendants pursuant to the above-referenced statutes and in conformance with the requirements set forth in 28 U.S.C. § 1446, pray that this action be removed from the County Court at Law No. 4, Dallas County, Texas.

Respectfully submitted,

**WILLIAM W. KRUEGER, III**
*Attorney-in-charge*
State Bar No. 11740530
**KEVIN M. CURLEY**
State Bar No. 24047314
**FLETCHER & SPRINGER, L.L.P**
8750 North Central Expressway
Suite 1600
Dallas, Texas 75231
(214) 987-9600
(214) 987-9866 [Fax]

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was served by the following manner, on the 26th, day of January, 2007, to:

Sammie Smith
1401 Elm Street
Suite 1800
Dallas, Texas 75202

_____ Via Hand Delivery
✓ Via Certified Mail Return Receipt Requested
_____ Via Facsimile
_____ Via Regular Mail

**KEVIN M. CURLEY**

FILED
2007 JAN 26 AM 11:56

CAUSE NO. CC-06-18148-D

| | | |
|---|---|---|
| JAMES L. HAAR, Plaintiff, | § | IN THE COUNTY COURT |
| | § | |
| | § | |
| vs. | § | AT LAW NO. 4 |
| | § | |
| ARTHUR JAMES JUMPER, | § | |
| STEVE DAVIS, MAURICE HARRELL, | § | |
| THE CITY OF SEAGOVILLE, | § | |
| and DOES 1 through 3, | § | |
| Defendants, | § | DALLAS COUNTY, TEXAS |

**PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION**

TO THE HONORABLE COURT:

COMES NOW Plaintiff, JAMES L. HAAR, and files this Plaintiff's First Amended Original Petition complaining of ARTHUR JAMES JUMPER, hereinafter referred to as "Defendant JUMPER", STEVE DAVIS, hereinafter referred to as "Defendant DAVIS", MAURICE HARRELL, herein after referred to as "Defendant HARRELL", and THE CITY OF SEAGOVILLE, hereinafter referred to as "CITY", and for cause of action would respectfully show the following:

**I.**
**JURISDICTION AND VENUE**

1. As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has suffered damages in an amount in excess of the minimum jurisdictional requirements of this court. Accordingly, this Honorable Court has jurisdiction.

2. Venue is proper in Dallas County, Texas, because this is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred.



EXHIBIT
tabbles
"A"

## II.
## DISCOVERY

3. Discovery in this case should be conducted under level 2, since damages are in excess of $50,000.00.

## III.
## PARTIES

4. Plaintiff JAMES L. HAAR is an individual residing in Balch Springs, Texas.

5. Defendant, ARTHUR JAMES JUMPER, is an individual who, at all times relevant hereto, was a police officer for the Seagoville Police Department and, in that capacity, acted under the color of law. Defendant JUMPER has been served with process of service and has filed an answer currently before this Court.

6. Defendant, STEVEN DAVIS, is an individual who, at all times relevant hereto, was a police officer for the Seagoville Police Department and, in that capacity, acted under the color of law. Defendant DAVIS has been served with process of service and has filed an answer currently before this Court.

7. Defendant, MAURICE HARRELL, is an individual who, at all times relevant hereto, was a judicial officer of The City of Seagoville and, in that capacity, acted under the color of law. Defendant HARRELL has been served with process of service and has filed an answer currently before this Court.

8. Defendant THE CITY OF SEAGOVILLE, is a Texas municipality situated in Dallas County, Texas, and a "governmental unit" under the Texas Tort Claims Act that, at all times relevant hereto, employed the individual Defendants. Defendant CITY has been served with process of service and has filed an answer currently before this Court.

## IV.
## FACTUAL BACKGROUND

9. This is a civil rights action for money damages. Plaintiff has been denied rights guaranteed to him by federal and state law. Because of the acts and omissions of the Defendants as alleged herein, Plaintiff was falsely arrested, forced to endure the process of being booked in jail, and has been deprived of his personal property, all in violation of the Fourth and Fourteenth Amendments to the United States Constitution, as well as in violation of the laws of the State of Texas. Furthermore, each of the Plaintiff's civil rights were flagrantly violated as a direct result of a complete and catastrophic breakdown in supervision.

10. Specifically, Plaintiff's arrest, more particularly described below, was made possible by the false statements contained in arrest and search warrants procured by the Defendants herein. The affidavits for both warrants contained false and misleading information and omitted exculpatory information which would have eliminated any probable cause to warrant Defendants to believe that Plaintiff did not own the property in question. Plaintiff could not have "stolen" the boat since it was his own property.

11. At all relevant times, Defendant JUMPER was the superior officer and/or supervisor of Defendant DAVIS. In that capacity, Plaintiff alleges that Defendants JUMPER and DAVIS discussed securing the warrants with each other, and a third-party by the name of Freddy Mitchell, and came to an unconstitutional conspiratorial agreement that one of the three would swear out the warrant for the Plaintiff's arrest and seizure of his personal property with intentionally false and misleading information to the detriment of the Plaintiff. Furthermore, the warrants secured by Defendants JUMPER and DAVIS were not only false and misleading, but were knowingly not based on probable cause and failed to consider that

Plaintiff held legal title to the subject boat. In fact, by relying on information provided by a third-party, Defendant DAVIS was actually aware that Plaintiff had previously obtained a repossession number from the Defendant CITY, and that the number would not have been issued to him had he not shown proper ownership documents at that time. Nevertheless, Defendants JUMPER, and DAVIS pressed onward, conspiring to effectuate Plaintiff's arrest and seizure of his property, despite the fact that each had enough information to rise to the level of actual knowledge, that Plaintiff had, in fact, not committed a crime. Despite that knowledge, these Defendants proceeded in a manner that violated Plaintiff's rights.

12. It is not known at this time whether the false arrest and wrongful seizure of Plaintiff's property occurred because of illegal collusion between Freddy Mitchell and Defendants JUMPER and/or DAVIS, or because of the mind-boggling level of police incompetence that resulted in the arrest of an innocent individual. Regardless of which scenario proves to be true, neither could have taken place were it not for a complete breakdown at the supervisory level of the Seagoville Police Department. The policies and procedures in place within that department were inherently flawed.

13. More particularly, this action arises from a series of events leading up the wrongful arrest of Plaintiff on May 20, 2006 and the wrongful seizure of Plaintiff's personal property, thereafter, on May 23, 2006. The events leading to Plaintiff's arrest were set in motion months prior to Plaintiff's arrest, which support the notion that Defendants' conduct was more intentional than coincidental. Plaintiff had entered into an agreement with Freddy Mitchell for the sale and purchase of Plaintiff's 1998 Watercraft Baha Boat. Mr. Mitchell was to make monthly payments to Plaintiff until the contractually agreed upon amount was

paid in full. However, sometime in early 2005, Mr. Mitchell stopped making the agreed upon payments to Plaintiff and as a result failed to fulfill his obligations under the agreement. As a result, Plaintiff retained title and his property interests in the subject boat.

14. Despite Plaintiff's demand for the return of the boat, Mr. Mitchell failed to comply. Therefore, on or about May 13, 2006, Plaintiff applied for and received a repossession number from the Seagoville Police Department advising of his intent to repossess the boat from Mr. Mitchell. At the time of the application, Plaintiff provided proof of ownership by suppling the department with a valid Certificate of Title and all relevant identification numbers. Plaintiff thereafter validly repossessed the boat from Freddy Mitchell.

15. Despite the above, Freddy Mitchell reported the boat stolen to the Seagoville Police Department. Apparently, the report filed by Mr. Mitchell was not the first time he sought law enforcement's intervention in this matter. Mr. Mitchell had, in fact, contacted the Balch Springs Police Department on numerous occasions complaining of Plaintiff's claim of ownership in the boat and seeking the Balch Springs Police Department's involvement. It was only after Mr. Mitchell was repeatedly told that any such title dispute was a civil matter and not a matter for law enforcement that Mr. Mitchell focused his efforts on the Seagoville Police Department.

16. During the months leading up to Plaintiff's arrest, Mr. Mitchell had made numerous calls to the Seagoville Police Department, specifically to Defendants JUMPER and DAVIS. At some point during one of those conversations with Defendant JUMPER, Defendant JUMPER inquired as to why Mr. Mitchell had not yet sought remedy in a civil action, to which Mr. Mitchell had no reply. These facts establish that at least Defendant JUMPER was

aware of the property dispute and, in fact, was even aware that Plaintiff actually held legal title to the subject boat prior to Plaintiff's arrest. Moreover, Defendant DAVIS's reliance on information provided by the third-party, established that Defendant DAVIS was also aware that Plaintiff had produced valid title documentation when he applied for the repossession number, thus making him the legal title holder of the subject boat.

17. Despite that knowledge and without making a good faith effort to investigate further, Defendants JUMPER and DAVIS, applied for an arrest warrant. Plaintiff alleges that that warrant is presumed to be facially invalid as it (1) fails to establish the requisite probable cause and (2) it was not signed by the magistrate, but rather his signature was affixed by a rubber stamp. Plaintiff believes that one or more of the Defendants herein unlawfully procured Defendant MAURICE HARRELL's signature without his authority, or at least without him being present when the stamp was affixed.

18. Thereafter, on May 20, 2006, Defendants JUMPER and DAVIS proceeded to Plaintiff's place of business in Balch Springs, Texas to arrest Plaintiff for stealing his own property. During their custodial interrogation of Plaintiff as to the whereabouts of the boat, Plaintiff produced the Certificate of Title identifying Plaintiff as the legal owner of the boat, and the repossession number that the Seagoville Police Department had provided Plaintiff on or about May 13, 2006. Plaintiff further advised Defendants JUMPER and DAVIS of where the boat was being stored and offered to release the boat into the custody of Seagoville Police Department to be held until a civil court could decide the ownership issue. Defendant JUMPER, however, refused the offer and, in fact, informed Plaintiff that the boat had to be returned to Freddy Mitchell personally. He further advised Plaintiff that if he did not turn

over the boat immediately, he would arrest the Plaintiff under the authority of the arrest warrant obtained against him. Plaintiff's request to see the actual warrant was denied.

19. When Plaintiff refused to give his property to Freddy Mitchell, Defendants JUMPER and DAVIS proceeded to arrest him and transport him to the Seagoville Police Department where he was charged with one count of a third-degree felony Theft, and detained and questioned for more than two hours without the opportunity to make a phone call. At no time was Plaintiff ever given his *Miranda* warnings. While in custody, Plaintiff learned from conversations with Defendant DAVIS that Mr. Mitchell had been making numerous complaints about Plaintiff and that the Seagoville Police Department never intended on pursuing Plaintiff for the charge of Theft, but rather was merely interested in retrieving the boat to satisfy Freddy Mitchell.

20. He was later released from jail on a $1,500.00 cash bond without ever being formally arraigned before a judge. Plaintiff learned after his release that Defendant JUMPER had agreed to set aside his Theft charge and delay forwarding it to the District Attorney's office until such time as a civil suit was adjudicated regarding the boat. In turn, Plaintiff agreed to hold the boat at the storage facility in which it was currently being stored without altering or removing the boat in any way until such time as a civil suit was adjudicated.

21. Despite Plaintiff's concessions, Defendant JUMPER proceeded to obtain a search warrant on May 22, 2006 by means of his affidavit swearing to a multitude of false and misleading statements. With the invalid search warrant, Defendants JUMPER and DAVIS proceeded to the storage facility on May 23, 2006, cut the locks on the unit rented by a third-party and not Plaintiff, removed the boat, and photograph the boat and the remaining contents of the

storage unit.

22. As evidenced above, Plaintiff's arrest would not have been possible without the false assertions made by Freddy Mitchell and Defendants JUMPER and DAVIS. Nor would the arrest have resulted had the Defendants acted in good faith in investigating the claims of Freddy Mitchell, utilized the public data available to them to ascertain who held legal title to the property, or simply given the Certificate of Title a cursory review when it was produced to them by the Plaintiff.

23. Plaintiff asserts that Defendants JUMPER and DAVIS were either plainly incompetent or knowingly violated the law. Their incompetence is alleged for the following reasons:

a. for failing to recognize the Certificate of Title produced by Plaintiff as proof of legal ownership of the subject boat.

b. for failing to investigate the validity of the claims made by third-party, Freddy Mitchell; and

c. for simply failing to communicate with other officers in other departments within the Seagoville Police Department regarding Plaintiff's intent to validly repossess the subject boat; and

d. for failing to recognize matters which relate to civil claims and remedies versus those which are criminal in nature.

24. In addition to being plainly incompetent, Plaintiff also alleges that Defendants JUMPER and DAVIS knowingly violated the law based upon the following facts:

a. by generating arrest and search affidavits/warrants containing intentionally false statements; and

b. by relying on information from third-party, Freddy Mitchell, which they knew or

should have known to be unreliable;

c. by failing to provide Plaintiff with *Miranda* warnings prior to their custodial interrogation of Plaintiff; and

d. by wrongfully seizing Plaintiff's personal property, namely the subject boat, by means of an invalid search warrant issued without probable cause and based upon knowingly false information.

25. Based on the forgoing, Plaintiff alleges that at the time of his arrest and seizure of his personal property, Defendants JUMPER and DAVIS knew there was no probable cause for the arrest or seizure, but effectuated both any way in violation of the Fourth and Fourteenth Amendments. The decision by Defendants JUMPER and DAVIS to swear out these warrants was plainly incompetent for all of the reasons identified above and knowingly done in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

26. Finally, Plaintiff's civil rights were also violated as a result of a complete breakdown in supervision by Defendant THE CITY OF SEAGOVILLE. Specifically, it intentionally, knowingly, recklessly, or with deliberate indifference to the rights of Plaintiff, failed to instruct, supervise, control, and/or discipline, on a continuing basis, Defendant MAURICE HARRELL in his policy and decision making with respect to the issuance of arrest warrants, and failed to instruct, supervise, control, and/or discipline, on a continuing basis, Defendants JUMPER and DAVIS in the performance of their law enforcement duties.

## V.
## CLAIMS FOR VIOLATION OF FOURTH AND FOURTEENTH AMENDMENT RIGHTS UNDER 42 U.S.C. § 1983

27. To prevail in an action brought under 42 U.S.C. § 1983, Plaintiff must satisfy two prongs, and prove that: (1) he was deprived of a right, immunity, or privilege secured by the Constitution or laws of the United States, and (2) he was deprived of his right, immunity or

privilege, by a person acting under color of state law. 42 U.S.C.A. § 1983 (West 1994). Plaintiff would show that Defendants falsely arrested Plaintiff and wrongfully seized his property, and that those violations resulted from a municipal police and/or practice of Defendant CITY.

A. **False Arrest**

28. Pursuant to the Fourth and Fourteenth Amendments, and procedurally pursuant to 42 U.S.C. § 1983, Plaintiff sues Defendants JUMPER and DAVIS for falsely arresting him without probable cause and with the express knowledge that Plaintiff had committed no crime, and for conspiring to swear out a false and misleading arrest warrant to effectuate same.

29. Acting under color of law, Defendants JUMPER and DAVIS, intentionally, knowingly, recklessly, or with deliberate indifference to the rights of the inhabitants of Dallas County, Texas, violated the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution. Specifically, Defendants JUMPER and DAVIS acted in bad faith by willfully detaining Plaintiff by means of an unlawful arrest. Specifically, the arrest was procured without legal authority and by a warrant that was legally insufficient. Notwithstanding the claim that Freddy Mitchell had made a stolen vehicle report with Defendant CITY (as alleged in the affidavit to the Arrest Warrant), additional factual assertions made by Defendant DAVIS in the affidavit show that he was aware that the allegedly stolen boat was, in fact, the subject of an ongoing contract dispute between private parties. This fact is sufficient to negate any reason for Defendant DAVIS to have probable cause to believe that the boat was stolen. *See Pickens v. Miller*, 216 F. Supp. 2d 1011, 1014-15 (N.D. Cal. 2002).

30. A police officer is liable for providing false information in a warrant affidavit if he provided

the information despite knowing of its falsity, or he would have known it was false absent his reckless disregard for the truth. *See Franks v. Delaware*, 438 U.S. 154 (1978). In addition, it must be shown that probable cause would not be established absent the officer's false information. *Id.* Based the forgoing facts, it is clear that no reasonably competent officer including Defendants JUMPER and DAVIS, could have concluded that an arrest warrant should be issued against Plaintiff.

31. Notwithstanding the above, even a valid arrest warrant provides no justification for Defendants JUMPER and DAVIS' abuse of their official authority. Likewise, even if a valid arrest warrant were procured for Plaintiff, the subsequent arrest of Plaintiff on May 20, 2006 was made with Defendants JUMPER and DAVIS having additional information to negate probable cause. Thus, the subsequent arrest was yet another violation of Plaintiff's Fourth Amendment right to be free from an arrest without probable cause. Specifically, when on May 20, 2006, Defendants JUMPER and DAVIS, under order of the arrest warrant dated May 19, 2006, proceeded to Plaintiff's place of business and began questioning him about the boat on May 20, 2006, the questioning amounted to a custodial interrogation of the Plaintiff, which was done without *Miranda* warnings ever having been given.

32. It was during that custodial interrogation that Plaintiff produced the Certificate of Title to Defendants documenting Plaintiff's ownership right in the subject boat. Plaintiff further advised Defendants that he and Freddy Mitchell had a contract for the sale of the boat that had been breached by Mr. Mitchell's non-payment, and as such there was an ongoing private contract dispute between the two individuals. Despite additional confirmation that the stolen boat was truly a civil dispute between private citizens, Defendants JUMPER and DAVIS

arrested Plaintiff, took him back to the police station and resumed their custodial interrogation of Plaintiff, still without *Miranda*. At the station, Plaintiff was booked, charged with felony theft, and later posted bond and was released without ever appearing before a magistrate, in violation of the Texas Code of Criminal Procedure art. 15.17 (West 2005).

### B. Wrongful Seizure

33. Pursuant to the Fourth and Fourteenth Amendments, and procedurally pursuant to 42 U.S.C. § 1983, Plaintiff sues Defendant JUMPER for wrongful seizure of his personal property by means of an invalid search warrant issued without probable cause and based upon knowingly false information provided by Defendant JUMPER.

34. Acting under color of law, Defendant JUMPER, intentionally, knowingly, recklessly, or with deliberate indifference to the rights of the inhabitants of Dallas County, Texas, violated the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution. Specifically, Plaintiff would show that the search warrant would not have issued due to lack of probable cause absent the false information provided by Defendant JUMPER in the supporting affidavit. At the time of issuance of the search warrant on May 22, 2006, Defendant JUMPER had already acquired the knowledge and proof that Plaintiff was, in fact, the legal owner of the subject boat and that a civil property dispute was going to be filed by Plaintiff to resolve the private contract issues. Defendant JUMPER learned all of the forgoing information prior to and after Plaintiff's arrest on May 20, 2006 while he conducted a custodial interrogation of Plaintiff at his place of business and while his partner, Defendant DAVIS, continued the custodial interrogation of Plaintiff at the police station after his arrest.

As state above, at no time was Plaintiff ever given his *Miranda* warnings.

35. Despite his knowledge of these facts, Defendant JUMPER still sought to obtain the search warrant on May 22, 2006. In doing so, he disregarded facts known to him that dissipated the probable cause required for the search warrant. Furthermore, he announced in his supporting complaint that much of his knowledge of the circumstances came from his "non-custodial" interview with Plaintiff. At no times relevant hereto has Plaintiff ever engaged in a "non-custodial" interview with any Defendant herein. Plaintiff's sole communications with Defendant JUMPER occurred at Plaintiff's place of business on May 20, 2006 after the warrant for his arrest had been obtained. In light of that outstanding warrant of May 19, 2006, any "interview" conducted by Defendant JUMPER of Plaintiff was "custodial" and without *Miranda*.

36. Again, an officer may not provide knowingly false information in a warrant affidavit. *See Franks*, 438 U.S. at 154. Thus, based the forgoing facts, it is obvious that no reasonably competent officer including Defendants JUMPER and DAVIS, could have concluded that a warrant should have issued for Plaintiff's property.

### C. Lack of Supervision and Inadequate Training

37. Pursuant to the Fourth and Fourteenth Amendments, and procedurally pursuant to 42 U.S.C. § 1983, Plaintiff sues Defendant JUMPER for failing to take any preventative or remedial measures to guard against the conduct of Defendant DAVIS, which is more fully set forth and described above, and had Defendant JUMPER taken such measures, Plaintiff would not have suffered the deprivation of rights as set forth herein. Defendant JUMPER had actual or constructive knowledge that his subordinate was engaged in conduct that posed a

pervasive and unreasonable risk of constitutional injury to citizens such as Plaintiff. Defendant JUMPER's response to that knowledge was so inadequate that it amounted to deliberate indifference to or tacit authorization of the illegal actions. The failures of Defendant JUMPER amounted to gross negligence, deliberate indifference, or deliberate misconduct which directly caused the deprivation suffered by Plaintiff. Defendant JUMPER failed to train, instruct, supervise, and discipline Defendant DAVIS, and said failures cause Plaintiff's damages

### D. Official Liability of Defendant City

38. A municipality is liable under 42 U.S.C. § 1983 for constitutional torts of its officials even absent actual knowledge of its officials' propensity for misconduct so long as the municipality itself was a "'moving force'" behind the deprivation. *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell v. New York Dept. of Social Services*, 436 U.S. 658, 694 (1978)). Thus, a municipality's liability is dependent upon whether such constitutional deprivations were in compliance with the municipality's custom, policies or procedures even if the conduct had not yet been formally approved by those with the decision making authority. *See Monell*, 436 U.S. at 690-91. Inherently deficient administrative procedures involving the discovery of police or judicial misconduct are sufficient to trigger liability. *Brandon*, 469 U.S. at 467. Likewise, a municipality's failure to supervise will trigger liability for the constitutional torts committed by the individual officer. *Kersh v. Derozier*, 851 F.2d 1509, 1513 n.6 (5th Cir. 1988).

39. At all times relevant hereto, Defendants JUMPER and DAVIS, as police officers of the City of Seagoville Police Department, were acting under the direction and control of the City of

Seagoville which acted through its agents and employees who were responsible for making policy decisions for the police department, its officers and operations, and Defendants JUMPER and DAVIS were acting pursuant to either official policy or the practice, custom, and usage of the Defendant CITY OF SEAGOVILLE and its police department.

40. Furthermore, at all times relevant hereto, Defendants JUMPER and DAVIS, as police officers of the City of Seagoville Police Department, were acting under the direction and control of the City of Seagoville which acted through its agents and employees who were responsible for making policy decisions, including but not limited to Defendant MAURICE HARRELL, who was responsible for establishing the policies of the police department and its officers for obtaining arrest warrants. Defendants JUMPER and DAVIS were acting pursuant to those official/judicial policies, practices or customs of Defendant CITY and Defendant MAURICE HARRELL.

41. When an individual, alone, is the ultimate authority of a municipality's power, such as Defendant HARRELL was for Defendant CITY on the issue of issuing warrants, the municipality will be liable for that individual's wrongful conduct and decisions because they represent official policy. *See Turner v. Upton County, Texas*, 915 F.2d 133 (5th Cir. 1990). Moreover, as the United States Supreme Court reasoned in *Monell*, it is enough to hold Defendant CITY liable in this case since the acts of its agent, Defendant HARRELL, can be fairly said to represent the official policy of the City. 436 U.S. at 694.

42. Thus, acting under color of law, by and through the policy makers of the CITY and pursuant to official policy or custom and practice, Defendant CITY intentionally, knowingly, recklessly, or with deliberate indifference to the rights of the inhabitants of the City of

Seagoville and to the Plaintiff, failed to instruct, supervise, control, and/or discipline, on a continuing basis, Defendant JUMPER, DAVIS and HARRELL in the performance of their duties to refrain from:

a. Conspiring to violated te rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and Laws of the United States and Laws of the State of Texas; and

b. Otherwise depriving citizens and individuals of their constitutional and statutory rights, privileges, and immunities.

43. The Defendant CITY had knowledge of, or had it diligently exercised its duties to instruct, supervise, control, and discipline on a continuing basis, should have knowledge that the wrongs that were done, as heretofore alleged, or other unlawful or unconstitutional acts were going to be committed. Defendant CITY had the power to prevent or aid in preventing the commission of said wrongs, could have done so, and intentionally, knowingly, or with deliberate indifference to the rights of the inhabitants of the city and Dallas County, Texas, failed or refused to do so.

44. Defendant CITY directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendants JUMPER, DAVIS and HARRELL heretofore described.

## VI.
## STATE LAW CAUSES OF ACTION

45. As a direct and proximate result of the same above-described actions of the Defendants herein, Plaintiff's rights were violated under the laws of the State of Texas.

### A. Violation of Texas Code of Criminal Procedure Art. 15.02(3)

46. Plaintiff would show that Defendant MAURICE HARRELL failed to comply with article 15.02(3) of the Code of Criminal Procedure and as a result issued a warrant for Plaintiff's

arrest that amounted to a violation of his statutory rights. *See* Tex. Code Crim. Proc. art. 15.02(3) (West 2005).

47. Specifically, the arrest warrant obtained against Plaintiff was simply rubber stamped by Defendant HARRELL in violation of state law. Plaintiff would show that the stamped signature of the magistrate creates the presumption of invalidity which may be substantiated by evidence that the stamp was not done under the magistrate's immediate authority and direction, nor was it done in his presence. *See Stork v. State*, 23 S.W.2d 733,735 (Tex. Crim. App. 1929). On its face, the warrant appears to have no time of issuance noted other than the hand written date. The time of day is omitted while the date is handwritten. It seems to follow that had the magistrate actually personally dated the warrant, he would also have personally signed on the following signature line. It also seems likely that had the magistrate had the propensity to fill-in the blanks designated for the date of issuance, he would have also completed the time of day.

48. These facts give rise to the presumption that Defendant HARRELL was, in fact, not present when the warrant was signed, rather it was partially completed by another individual and later stamped with Defendant HARRELL's signature.

49. Defendant HARRELL's intentional conduct of failing to maintain custody and control over his seal and/or relinquishing custody and control of his seal to individuals who he knowingly or should have known would utilize same without the authority to do so amounts to a violation of article 15.02(3) of the Code of Criminal Procedure and is a proximate cause of the damages sustained by Plaintiff herein. *See* CCP art. 15.02(3). Accordingly, Defendant HARRELL is liable for Plaintiff's damages.

**B. Violation of Texas Code of Criminal Procedure Arts. 15.16 and 15.17**

50. Plaintiff would further show that Defendants JUMPER and DAVIS failed to comply with articles 15.16 and 15.17 of the Code of Criminal Procedure and as a result arrested Plaintiff and undertook custody of Plaintiff in a manner that amounted to a violation of his statutory rights. *See* Tex. Code Crim. Proc. arts. 15.15. & 15.17 (West 2005).

51. Specifically, when Defendants JUMPER and DAVIS arrested Plaintiff on May 20, 2006, they took him back to the police station and resumed a custodial interrogation of Plaintiff. At the station, Plaintiff was later booked, charged with felony theft, posted bond and released without ever appearing before a magistrate, in violation of articles. 15.16 and 15.17 of the Code of Criminal Procedure.

52. The duties of an arresting officer are specifically defined under article 15.17. To wit, the arresting officer must take the person arrested before some magistrate of the county where the accused was arrested no later than 48 hours after the arrest. *See* CCP art. 15.17(a). Failure to do so, amounts to a violation of the arrested individuals rights.

53. Based on the forgoing facts, Defendants JUMPER and DAVIS's conduct amounts to a violation of Plaintiff's right to appear before a magistrate within 48 hours of his arrest. Thus, Defendants JUMPER and DAVIS are liable for Plaintiff's damages.

**C. Violation of Texas Code of Criminal Procedure Article 18.01(b)**

54. Plaintiff would further show that Defendant JUMPER failed to comply with article 18.01 of the Code of Criminal Procedure and as a result wrongfully seized Plaintiff's personal property in a manner that amounted to a violation of his statutory rights. *See* Tex. Code Crim. Proc. art. 18.01(b) (West 2005).

55. Specifically, Plaintiff would show that the search warrant would not have issued due to lack of probable cause absent the false information provided by Defendant JUMPER in the supporting affidavit. At the time of issuance of the search warrant on May 22, 2006, Defendant JUMPER had already acquired the knowledge and proof that Plaintiff was, in fact, the legal owner of the subject boat and that a civil property dispute was going to be filed by Plaintiff to resolve the private contract issues. Defendant JUMPER learned all of the forgoing information prior to and after Plaintiff's arrest on May 20, 2006 while he conducted a custodial interrogation of Plaintiff at his place of business. Despite his knowledge of these facts, Defendant JUMPER still sought to obtain the search warrant on May 22, 2006. In doing so, he intentionally disregarded facts known to him that dissipated the probable cause required for the search warrant.

56. Article 18.01(b) of the Code of Criminal Procedure requires that no warrant shall issue without probable cause. *See* CCP art. 18.01(b). Based on his knowledge of the forgoing facts, Defendant JUMPER could not have had probable cause to believe that a warrant should have issued for Plaintiff's property. Therefore, the search warrant that was ultimately issued was made in direct violation of Plaintiff's statutory rights, thus making Defendant JUMPER liable for Plaintiff's damages.

**D. <u>False Arrest</u>**

57. To make a claim for false imprisonment, the Plaintiff must show that he was (1) wilfully detained, (2) without his consent, and (3) without the authority of law. *Emerson* v. *Borland*, 927 S.W.2d 709, 720 (Tex.App.–Austin 1996, no writ). In addition to the above stated, constitutional violations, Plaintiff contends that his arrest on May 20, 2006 was unlawful

under Texas law, thus, Defendants JUMPER and DAVIS are liable for Plaintiff's damages.

58. Texas law permits an action for false imprisonment if an arrest is executed under process which is legally insufficient in form or not properly issued. *James v. Brown*, 637 S.W. 2d 914, 918 (Tex. 1982). Plaintiff would rely on the same facts and circumstances as cited above in showing that the arrest warrant obtained by Defendant DAVIS was facially insufficient in that the application lacked the requisite probable cause and, in fact, contained misleading information while omitting information known to Defendants which would specifically negated probably cause. A police officer may not disregard facts tending to dissipate probable cause. *See Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988), *cert. denied*, 488 U.S. 851.

59. Likewise, Plaintiff would rely on the above stated facts in showing that the arrest warrant signed by Defendant HARRELL was not duly issued and in direct violation of article 15.02(3) of the Code of Criminal Procedure. *See* CCP art. 15.02(3).

E. <u>Conspiracy</u>

60. Defendants JUMPER and DAVIS, and Freddie Mitchell conspired to achieve an unlawful purpose--namely to falsely arrest Plaintiff and deprive Plaintiff from his own personal property. There was a meeting of the minds on this purpose, as evidenced by the fact that Defendants JUMPER and DAVIS procured an illegal arrest warrant so that Defendants JUMPER and DAVIS could later arrest and seized the property of Plaintiff, despite Plaintiff's production of the title to the boat in his name and Plaintiff's agreement to leave the boat in the storage facility pending a civil suit to determine property ownership.

61. Both Defendants JUMPER and DAVIS took actual part in the conspiracy by (1) obtaining

a search and seizure warrant based on false testimony of Defendant DAVIS (2) arresting the Plaintiff knowing that the Plaintiff had not violated any criminal statutes and (3) seizing Plaintiff's personal property. Accordingly, Defendants JUMPER and DAVIS are liable for Plaintiff's damages.

**F. <u>Tortuous Interference with Contract</u>**

62. As stated previously, Plaintiff had a valid contract with Freddy Mitchell for the sale of the subject Baja boat and trailer. Defendants knew, or had reason to know, of Plaintiff's contract with Mr. Mitchell and Plaintiff's interest in the contract, since Plaintiff had notified the Seagoville Police Department of his intent to repossess the boat, and had, in fact, obtained a repossession number from the City.

63. Defendants JUMPER and DAVIS willfully and intentionally interfered with Plaintiff's contract with Freddy Mitchell by confiscating the boat and preventing the Plaintiff from enforcing his rights under the contract. Defendants' interference proximately caused injury to Plaintiff, which resulted in the loss of use of the boat, storage fees, and emotional distress. As a result, Plaintiff seeks unliquidated damages within the jurisdictional limits of this court. Furthermore, since Plaintiff's damages resulted from Defendants' malice or actual fraud, Plaintiff is entitled to and hereby seeks exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

**G. <u>Conversion</u>**

64. Plaintiff was the legal owner and title holder to the subject boat and trailer at all times herein. Accordingly, Plaintiff had a right to immediate possession of the property. Despite the forgoing facts, Defendants JUMPER and DAVIS wrongfully exercised dominion and control

over Plaintiff's property. Even if Defendants JUMPER and DAVIS had legally acquired possession of Plaintiff's property, they proceeded to wrongfully exercise dominion and control over that property when they refused to return the property upon Plaintiff's demand and proof of ownership.

65. Defendants' wrongful acts proximately caused injury to Plaintiff, which resulted in the loss of use of the converted property. Accordingly, Plaintiff seeks return of the converted property and unliquidated damages within the jurisdictional limits of this court.

66. Furthermore, Plaintiff's damages resulted from Defendants malice or actual fraud, which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a). Additionally, Plaintiff is entitled to recover reasonable and necessary attorney fees under Texas Property Code section 70.008 because this is a suit to recover the possession of a motorboat.

## VII.
## INAPPLICABILITY OF IMMUNITY

### A. Official and Judicial Immunity

67. Under Texas law, governmental employees are entitled to the defense of official immunity from performance of their discretionary duties in good faith as long as they are acting within the scope of their authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650,653 (Tex.1994). The test for good faith is one of objective reasonableness. *Id.* at 656. Based on the forgoing discussion of Plaintiff's federal claim, the facts establish that it was objectively unreasonable for Defendants JUMPER and DAVIS to believe that probable cause existed for the arrest of Plaintiff and the seizure of Plaintiff's personal property. As such, Defendants JUMPER and DAVIS should not be protected by the official immunity defense.

68. Likewise, Defendant MAURICE HARRELL is a municipal official to whom THE CITY OF SEAGOVILLE has delegated policy making authority with respect to the issuance of criminal warrants. Although Plaintiff concedes that a judge has absolute immunity for damages for judicial acts performed within his/her jurisdiction, the improper use of a rubber stamped signature raises the presumption of a possible abuse of due process. *See Stork*, 23 S.W.2d at 735. That presumption may be overcome by a showing that the use of a rubber stamped signature was done in the presence of the judge and under the direction of the judge. *Id.* In fact, such authority may not even be vested in a clerk of the court or any other person unless it can be shown that said person is specifically acting at the direction of the judge and in the judge's presence. *Id.*

69. A judge acting in the forgoing manner will not be shielded by judicial immunity. *See Stork*, 23. S.W. 2d at 735. An act of a judge is simply not judicial unless it arose out of a personal visit to the judge while in his judicial capacity. *Id.* Thus, a judge is not entitled to claim judicial immunity when his physical presence is lacking. *Id.* The use of Defendant HARRELL's rubber stamped signature outside of his presence, amounts to his acting beyond the scope of his judicial authority. As such, Defendant HARRELL should not be protected by judicial immunity.

**B. <u>Qualified Immunity</u>**

70. Although government officials sued in a personal capacity may be entitled to a qualified immunity defense, a municipality sued in its official capacity is not afforded that same defense. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985). Furthermore, qualified immunity only protects government officials from civil liability if it was objectively

reasonable for them to believe their acts were lawful and did not violate an individuals clearly established rights. *See Siegert v. Gilley*, 500 U.S. 226, 231-32 (1991). The Fourth Amendment's guarantee that a warrant not be issued without probable cause is said to be a clearly established right. *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir.1996). Likewise, the right of an individual to not be subject to an unlawful seizure of his personal property is also an established constitutional right.

71. Based on the admissions of Defendants JUMPER and DAVIS that the ongoing dispute between Plaintiff and Freddy Mitchell was one of contract rather than criminal, said Defendants were not reasonable in believing that it was proper to arrest the Plaintiff and seize his property. Defendants JUMPER and DAVIS were well aware that had they disclosed to either issuing judges, the existence of the civil dispute between the parties (and more particularly, disclosed to the judge issuing the search warrant that Plaintiff, in fact, had a valid Certificate of Title to the subject boat), it would have negated the probable cause required for Plaintiff's arrest and seizure of Plaintiff's personal property.

72. It is well settled that a police officer applying for a warrant is required to disclose all material facts to the judge to whom application was made. This requirement furthers a persons right not to be arrested without probable cause. Such a right is violated when the officer submitting the probable cause affidavit knowingly and intentionally, or with reckless disregard for the truth, makes a false statement in the affidavit or omits material information which was necessary to the finding of probable cause. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

73. Thus, the issue of qualified immunity turns on whether Defendants JUMPER and DAVIS

could reasonably have believed that the Certificate of Title to the boat held in Plaintiff's name was not valid proof of ownership. Texas law provides that valid title and ownership rights vests in an individual with Certificate of Title. Thus, no police officer could have reasonably believed that Plaintiff was not the legal owner of the boat and that as such, could have stolen his own property. As such, Defendants JUMPER and DAVIS are not entitled to be protected from liability by a qualified immunity defense. Likewise, Defendant CITY is never protected by qualified immunity.

## VIII.
## GROSS NEGLIGENCE AGAINST ALL DEFENDANTS

74. Plaintiff would show that the conduct of the Defendants herein was so egregious, intentional, and wanton that punitive damages should be awarded by the trier of fact.

## IX.
## ATTORNEYS' FEES

75. Plaintiff demands an award of reasonable and necessary attorneys' fees pursuant to 42 U.S.C. 1988 and under the Texas Property Code section 70.008.

## X.
## DAMAGES

76. Plaintiff would show that as a direct result of the acts described above, Plaintiff has incurred the following damages:

a. Severe emotional distress and trauma suffered in the past in an amount within the jurisdictional limits of this court;

b. Severe emotional distress and trauma which Plaintiff is reasonably expected to suffer in the future in an amount within the jurisdictional limits of this court;

c. Severe mental pain and suffering suffered in the past in an amount within the jurisdictional limits of this court;

d. Severe mental pain and suffering which Plaintiff is reasonably expected to suffer in the future in an amount within the jurisdictional limits of this court;

e. Lost wages incurred by Plaintiff as a result of his being unable to operate his business while he was being harassed and falsely arrested by the Defendants herein;

f. Loss of earning capacity;

g. Damage to his reputation as a result of his wrongful arrest;

h. Storage fees incurred in the past, as well as those that will be incurred in the future, as a result of the unlawful seizure of Plaintiff's property; and

I. Loss of use of his personal property as a result of the unlawful seizure of same by Defendants.

77. Plaintiff expressly reserves his rights to re-plead his damages with greater specificity at a later date, and to conform said pleadings in accordance with proof presented at trial.

## X.
## PRAYER FOR RELIEF

78. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be duly cited to appear and answer herein, and that upon final trial of this cause, Plaintiff recover:

a. Judgment against Defendants jointly and severally for Plaintiff's damages as set forth in Paragraph X above, and incorporated herein as fully set forth;

b. Interest on said judgment at the legal rate from the date of judgment;

c. Pre-judgment interest as allowed by law;

d. Costs of court; and

e. Such other and further relief, general and special, legal and equitable, to which Plaintiff may be justly entitled.

Respectfully submitted,

LAW OFFICES OF PAYMA & KUHNEL, P.C.
1401 Elm Street
Suite 1800
Dallas, Texas 75202
(214)999-0000
(214)760-7028 Facsimile

By: ______________________
MICHAEL PAYMA
State Bar No. 00790560
SAMMIE M. SMITH
State Bar No. 24044902
ATTORNEYS FOR PLAINTIFF

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY.**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the forgoing was forwarded to defense counsel, William W. Krueger, III of Fletcher & Springer, L.L.C., at 8750 N. Central Expressway, Suite 1600, Dallas, Texas 75231, via facsimile and First Class Mail, on this the 26th day of January, 2007.

______________________
SAMMIE M. SMITH

RECEIVED
JAN 26 2007
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

3-07CV0180-N

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

ORIGINAL

**I. (a) PLAINTIFFS**
James L. Haar

**DEFENDANTS**
City of Seagoville, Texas, Officer K.W. Bailey, Dallas County, Texas and State of Texas

(b) County of Residence of First Listed Plaintiff: Dallas
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Dallas
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Sammie M. Smith, 1401 Elm Street, Suite 1800, Dallas, Texas 75202
214-999-0000

Attorneys (If Known)
William W. Krueger, III, 8750 N. Central Ewy. Suite 1600, Dallas, 75231
Kevin M. Curley, 8750 N. Central Ewy. Ste 1600, Dallas, 75231

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

PERSONAL INJURY
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☒ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
Habeas Corpus:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)
☐ 1 Original Proceeding ☒ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
Brief description of cause: §1983 Claims, 4th Amendment Violations; Civil Rights Violations

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 **DEMAND $**
CHECK YES only if demanded in complaint: **JURY DEMAND:** ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE DOCKET NUMBER

DATE 1/26/07 SIGNATURE OF ATTORNEY OF RECORD [signature]

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

JAN 2 6 2007
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**United States District Court**
**Northern District of Texas**

3-07CV0180-N

**Supplemental Civil Cover Sheet for Cases Removed from State Court**

ORIGINAL

**This form must be attached to the Civil Cover Sheet at the time the case is filed in the U.S. District Clerk's Office. Additional sheets may be used as necessary.**

1. **State Court Information:**

   Please identify the court from which the case is being removed and specify the number assigned to the case in that court.

| Court | Case Number |
|---|---|
| County Court at Law No. 4<br>Dallas County, Texas | CC-06-18148-D |

2. **Style of the Case:**

   Please include all Plaintiff(s), Defendant(s), Intervenor(s), Counterclaimant(s), Crossclaimant(s) and Third Party Claimant(s) still remaining in the case and indicate their party type. Also, please list the attorney(s) of record for each party named and include their bar number, firm, name, correct mailing address, and phone number (including area code).

| Party and Party Type | Attorney(s) |
|---|---|
| Plaintiff- James L. Haar | Sammie M. Smith<br>State Bar No. 24044902<br>1401 Elm Street, Suite 1800<br>Dallas, Texas 75202<br>(214) 999-0000<br>(214) 760-7028 |
| Defendants - City of Seagoville, Texas<br>Arthur James Jumper, Steve Davis, and Maurice Harrell | William W. Krueger, III<br>*Attorney-in-charge*<br>State Bar No. 11740530<br>Kevin M. Curley<br>State Bar No. 24047314<br>FLETCHER & SPRINGER, L.L.P<br>8750 N. Central Expressway 16th Floor<br>Dallas, Texas 75231<br>(214) 987-9600<br>(214) 987-9866 [Fax] |

**Supplemental Civil Cover Sheet**
**Page 2**

**3. Jury Demand:**

Was a Jury Demand made in State Court: **XX** Yes ☐ No

If "Yes," by which party and on what date?

Seagoville Defendants — January 26, 2007

**4. Answer:**

Was an Answer made in State Court? **XX** Yes ☐ No

If "Yes," by which party and on what date?

City of Seagoville, Texas
Arthur James Jumper
Steve Davis
Maurice Harrell

**5. Unserved Parties:**

The following parties have not been served at the time this case was removed:

Does 1 through 3

**6. Nonsuited, Dismissed or Terminated Parties:**

Please indicate any changes from the style on the State Court papers and the reason for that change:

| **Party** | **Reason** |
|---|---|
| No known changes. | |

**7. Claims of the Parties:**

The filing party submits the following summary of the remaining claims of each party in this litigation:

| **Party** | **Claims(s)** |
|---|---|
| James L. Haar | Civil Rights violations for violations of Fourth Amendment rights protected by the United States Constitution.<br><br>Claims for attorneys fees under 42 U.S.C. §1988 |